### E. J. HURLEY et al., Respondents, v. VILLAGE OF FAIRMOUNT et al., Appellants.

#### (171 N. W. 833.)

**Injunction — granting of temporary injunction — discretion of trial court.**

1. As a general rule the granting or refusal, the continuing or dissolving, of a temporary injunction, lies within the sound judicial discretion of the trial court, and its ruling will not be disturbed unless an abuse of such discretion is shown.

**Injunction — restraining of village officers — necessity of permission of War Industries Board to engage in project.**

2. In an action to restrain the officers of a village from installing a waterworks system and a sewerage system, a temporary restraining order was issued *ex parte* at the commencement of the action. Upon the hearing as to the continuing or dissolving of such order it was conceded that no permission had either been sought or obtained from the War Industries Board to construct such systems, as required by the directions of said Board. The trial court thereupon terminated the hearing and continued the restraining order in force until the further order of the court. *Held*, that the trial court did not abuse its discretion in so doing.

Opinion filed April 1, 1919. Rehearing denied April 15, 1919.

Appeal from the District Court of Richland County, *Allen,* J.

Defendants appeal from an order continuing a temporary restraining order in force.

Affirmed.

*W. E. Purcell* and *Jos. G. Forbes,* for appellants.

"Before an injunction is issued it must appear by the affidavit of the plaintiff or any other person that sufficient grounds exist therefor. Comp. Laws 1913, § 7530; Hyde v. Gearhart, 168 N. W. 719; 22 Cyc. 942 and cases cited.

The general police power includes the usual means of carrying out such power, includes municipal water and lighting services. Dill. Mun. Corp. 143–146; Maudlin v. City Council (S. C.) 11 S. E. 434; Rushville Gas Co. v. Rushville (Ind.) 23 N. E. 72; Crawfordsville v. Braden (Ind.) 28 N. E. 849; Bluffton v. Studebaker, 106 Ind. 129, 6 N. E. 7; Ellinwood v. Reedsburg, 64 N. W. 885; 28 Cyc. 941, 950; Fitzgerald v. Stattler, 168 N. W. 599.

When the proper officials of a municipality proceed to install improvements, when discretion of doing same is vested in them, it is conclusive and is not reviewable by the courts. Harney v. Benson, 45 Pac. 687; Cooley, Tax. 449–451; Rogers v. St. Paul, 22 Minn. 494; 1 Dill. Mun. Corp. 94; Powers v. Grand Rapids, 57 N. W. 250.

The authority to construct sewers is a general one, and resides in all municipal corporations unless expressly denied to them by the legislature. Ft. Wayne v. Cooms, 7 N. E. 743; 28 Cyc. 943, 949, and cases cited; Torcent v. Muskegon, 10 N. W. 132; Kundinger v. Saginaw, 93 N. W. 914; Irving v. Ford, 32 N. W. 601; Londoner v. Denver, 210 U. S. 373, 52 L. ed. 1103.

On having a motion for preliminary injunction or order to show cause, the court may go into the merits of the case, but is limited to the issues that are raised by the bill, answer, and affidavits, and cannot go into outside or collateral matters. 22 Cyc. 953, 999.

The existence of a right violated is a prerequisite to the granting of an injunction. 22 Cyc. 748, 749, 756, 975, 980; Burlington, C. R. & N. R. Co. v. Dey, 48 N. W. 98.

*W. S. Lauder,* for respondents.

CHRISTIANSON, Ch. J. This appeal is from an order continuing in force a temporary restraining order. The action in which the restraining order was issued was brought by the plaintiffs as taxpayers and property owners in the village of Fairmount, in Richland county, to restrain the board of trustees of said village from establishing or constructing, and from entering into any contract or contracts for the construction of, a waterworks system and sewerage system within said village. When the action was commenced an order was issued citing defendants to show cause why a temporary injunction should not be issued. The order to show cause restrained the defendants, until the further order of the court, from proceeding with, or contracting for the construction of, such waterworks system and sewerage system. The order to show cause came on to be heard on September 12, 1918. After defendants had made their showing and announced that they had no further evidence to offer in support of their application for the continuance in force of the temporary restraining order, the court inquired of defendants' counsel whether defendants had made application to the "War Industries Board" or the "State Council of Defense" for permission to construct the works in question, as required by the resolutions of said boards; and whether the said War Industries Board and the State Council of Defense had granted permission to the defendants to construct said waterworks and sewerage systems. To this inquiry defendants' counsel replied in substance that the defendants had not made application to any board whatever for permission to construct the works involved in this litigation, and asked for leave to introduce evidence showing the good faith of the defendants, their compliance with the statutes of this state having reference to the construction of such projects, and the public demand for such construction. The trial court thereupon said: "While there is no question, in my mind, as to the good faith of the village authorities in connection with this matter, it seems to me it would be futile for us to take up the time and for the litigants to incur the necessary expense in connection with further testimony, in connection with this matter, because of the fact that the court considers itself bound by the recommendations and findings of the "War Industries Board," and those associated with them in reference to conservation of building materials and labor, at the present time. Irrespective of any evidence heretofore offered, or that might be

offered by the defendants, in this action, and taking into consideration only so much of the evidence already offered as shows that this is a public enterprise, contemplated by the village of Fairmount, that the execution of this work in question would necessarily entail the use of certain materials and the use of certain laborers which the court considers is forbidden under the present exigency, excepting by a permit which the response of counsel for the defendants shows has not been obtained, and basing its decision as above, the court deems it to be its duty to now deny the application of the defendants to offer further evidence at this time and to continue in force the temporary injunction heretofore granted until the further order of the court."

In conformity with such pronouncement of the trial court, an order was entered continuing the restraining order formerly issued in force, until the further order of the court. This appeal is from such order.

The only question involved on this appeal is whether the trial court was justified in terminating the hearing and continuing the temporary restraining order in force.

As a general rule, "the right to a preliminary injunction is not *ex debito justitiæ,* but the application is addressed to the sound discretion of the court, to be guided according to the circumstances of the particular case." High, Inj. § 11. The same rule is applicable to the continuing or dissolving of a preliminary injunction. Cyc. says: "The continuing or dissolving of a preliminary injunction lies within the sound discretion of the court. However, this discretion is to be regulated by sound and just rules. But in the absence of any showing of abuse, the discretion of the chancellor will not be controlled by an appellate court." 22 Cyc. 982, 983. As a general rule the merits of the case, or difficult or doubtful questions of law or fact therein, will not be determined upon the hearing of a motion for a preliminary injunction. 22 Cyc. 953, 954.

The complaint in the instant case sets forth that the plaintiffs are citizens, residents, property owners, and taxpayers in the village of Fairmount; that such village has a total assessed valuation of $133,180; that the estimated cost of the waterworks and the sewerage systems which the defendants propose, and are about, to construct, is $85,768. The complaint assails the proposed action of the village officers for various reasons. The answer admits that plaintiffs are residents, prop-

erty owners, and taxpayers in the village of Fairmount, and alleges that the actions of the village officers were and are in accordance with the public demand, and that public convenience and welfare demands the construction of the proposed waterworks and sewerage systems. We do not deem it necessary to set out at any great length the allegations of the pleadings. For it will be noticed that the trial judge based his action .continuing the temporary injunction in force altogether upon the proposition that no permission had been obtained from the War Industries Board to engage in the construction of the projects in question.

That the power to wage war which is granted to the government in the Federal Constitution is the power to wage war successfully is undeniable. That the Federal government in the exercise of this power may provide for the necessary means to wage war successfully follows as a necessary corollary. To this end it may pass conscription laws (Selective Draft Law Cases (Arver v. United States) 245 U. S. 366, 62 L. ed. 349, L.R.A.1918C, 361, 38 Sup. Ct. Rep. 159, Ann. Cas. 1918B, 856) and compel the men inducted into the Army to perform military service beyond the territorial limits of the country. Cox v. Wood, 247 U. S. 3, 62 L. ed. 947, 38 Sup. Ct. Rep. 421. That the Federal government may also mobilize the resources of the country, and to that end impose such regulations upon the use of property as are reasonably necessary to secure the successful prosecution of the War, is, we think, self-evident.

On March 21, 1918, the War Industries Board adopted a resolution reading in part as follows: "Where plans are being considered by certain states, counties, cities, and towns for the construction of public buildings and other improvements which will not contribute toward winning the War; and

"Whereas the carrying forward of these activities will involve the utilization of labor, materials, and capital urgently required for war purposes: Now, therefore, be it

"*Resolved,* by the War Industries Board that in the public interest all new undertakings not essential to and not contributing either directly or indirectly toward winning the War, which involve the utilization of labor, material, and capital required in the production, supply, or distribution of direct or indirect war needs, will be discouraged, notwith-

standing they may be of local importance and of a character which should in normal times meet with every encouragement; and be it further

"Resolved, that in fairness to those interested therein notice is hereby given that this Board will withhold from such projects priority assistance."

On September 3, 1918, the War Industries Board issued its circular No. 21, containing its directions with respect to the same subject. It enumerated and approved certain construction projects, and stated that no permits or licenses would be required therefor. But it further directed that "no building project not falling within one of the foregoing classes shall be undertaken without a permit in writing issued by or under the authority of the Chief of the Nonwar Construction Section of the Priorities Division of the War Industries Board." The projects involved in this litigation fall within the classes for which permits are prescribed.

It is suggested in appellants' brief that the construction of the waterworks and sewerage systems involved in this litigation would in no manner influence or affect the power or ability of the Federal government to carry on its part in the World War. It is probably true that the construction of these particular systems would not have had any noticeable effect upon the supply of labor or materials. But this same argument might with equal force have been urged by every state, county, city, or town in this country. And if carried to its logical conclusion the result would be that the Federal government would have been prevented from mobilizing and conserving the resources which were deemed reasonably necessary for a successful prosecution of the War. The argument might also have been urged by any person subject to the Selective Draft Law, that it would in no manner hamper or impede the prosecution of the War if he was relieved from such service. And it would probably have been true as applied to any individual case. But manifestly if one person might urge this, so might every person subject to the law. Of course the result would have been that no army could have been raised under the law.

In our opinion the trial court did not abuse its discretion in continuing the temporary injunction in force. On the contrary the discretion was wisely exercised.

Order affirmed.